# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBERT HOWARD, | ) |
|      Plaintiff, pro se, | ) ) ) |
| v. | ) ) **MEMORANDUM OPINION** |
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, | ) **AND RECOMMENDATION** )       1:08CV483 ) ) |
|      Defendant. | ) ) |

This matter is before the court on a motion to dismiss (docket no. 10) by Defendant American Institute of Certified Public Accountants ("AICPA"). Plaintiff has responded in opposition to the motion, and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge; therefore, this court must deal with the motion by way of recommendation. For the following reasons, it will be recommended that the motion be denied in part and granted in part.

**BACKGROUND**

Plaintiff, a male who was over forty at all relevant times, was an employee of Defendant from August 28, 2006, until he was fired on September 11, 2007. At the time of his termination Plaintiff was 59 years old. On or about June 19, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which he alleged that Defendant had discriminated against him on the basis of his sex and age in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630 et seq. Plaintiff also alleged in his charge that he was subjected to adverse employment actions in retaliation for exercising his rights under both Title VII and the ADEA. (*See* Compl. ¶ 27; *see also* EEOC Charge No. 433-2007-02291, attached as Ex. A.) On or about November 19, 2007, Plaintiff filed a second Charge of Discrimination with the EEOC, again asserting that Defendant discriminated against him on the basis of sex and age, and also asserting that Defendant retaliated against him for filing his first EEOC Charge. (*See* EEOC Charge No. 433-2008-00319, attached as Ex. B.)

The EEOC investigated the allegations contained in both EEOC Charges. The EEOC issued a "right-to-sue" letter with respect to the first EEOC Charge on or about December 21, 2007, and issued a "right-to-sue" letter with respect to the second EEOC Charge on or about March 17, 2008. (*See* Exs. C and D.) On June 16, 2008, 178 days after the EEOC issued the "right-to-sue" letter on the first EEOC Charge, Plaintiff filed this action in Orange County Superior Court. Plaintiff brings four claims for relief in the Complaint: (1) Wrongful Discharge in Violation of North Carolina Public Policy Against Sexual Harassment, Sex Discrimination, and Age Discrimination (First Claim for Relief) pursuant to the North Carolina Equal Employment Practices Act, N.C. GEN. STAT. § 143-422.2 et seq.; (2) Title VII Sex Discrimination (Second Claim for Relief); (3) ADEA Age Discrimination (Third Claim for Relief); and (4) Title VII and ADEA Retaliation (Fourth Claim for Relief).

Defendant removed the case to this court on July 16, 2008. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant has now moved for a dismissal of Plaintiff's claims.

**FACTS**

The following facts are assumed to be true for the purposes of the motion to dismiss. Defendant hired Plaintiff on August 28, 2006, as a Project Manager in its Specialized Communities and Practice Management Team ("SCPM Team"). (Compl. ¶¶ 5, 7, 11.) Plaintiff was initially supervised by two women, Jeannette Team and Teighlor March. (*Id.* ¶ 12.) Team and March are both around 30 years old. (*Id.*) Team and March were, in turn, supervised by Steve Winters, who served as the SCPM Team Director. (*Id.* ¶ 13; Ex. B.)

Plaintiff alleges that he excelled in the performance of his duties throughout his employment with Defendant. (*Id.* ¶ 12.) Plaintiff alleges that beginning in December 2006, March began subjecting him to "adverse actions" and "harassing" him. (*See* Compl. ¶ 14, Def.'s Ex. A.) Plaintiff alleges, for example, that March unfairly criticized his work, insulted him, and supervised his work more closely than other employees. (Compl. ¶ 14.) In early 2007, Plaintiff attended an out-of-state conference along with March and several other SCPM co-workers. (*Id.* ¶ 16.) According to Plaintiff, March and other female coworkers engaged in sexually inappropriate and threatening conduct while at the conference. (*Id.*) Specifically, March asked Plaintiff to accompany her to a male strip club, and, after he refused,

-3-

insinuated that he was not confident in his manhood. (*Id*.; Def.'s Ex. A.) Plaintiff also alleges that March and other co-workers made comments about men who they thought were "hot," and one female co-worker threatened to throw a drink on Plaintiff. (*Id.*) At some point either during or after the out-of-state conference, March asked Plaintiff whether he could accept working with and being supervised by younger women. (Compl. ¶ 15.) After the conference, March continued to: (1) criticize Plaintiff's work; (2) insult Plaintiff; and (3) take other unspecified actions that created a hostile work environment for Plaintiff.[1] (*Id.* ¶ 20.)

In March 2007, Plaintiff submitted a written complaint to Amy Robertson, a Senior Benefits & Compensation Manager in AICPA's Human Resources Department. (*Id.* ¶ 21.) Plaintiff recounted and complained of March's conduct, including the events that occurred during the conference. (*Id*. ¶ 21; Def.'s Ex. A.) Plaintiff alleges that after lodging his complaint, Defendant failed to investigate his complaint or to take appropriate corrective action.[2] (Compl. ¶ 22.) After complaining

---

[1] Although the Complaint refers to a "hostile work environment," Plaintiff does not appear to be bringing a formal claim for sex discrimination based on "hostile work environment." In any event, as will be discussed *infra*, the court should not consider Plaintiff's claims of sex discrimination based on events that occurred before June 2007, which include the alleged conduct of Plaintiff's co-workers at the conference, because Plaintiff did not timely file his claims based on this conduct.

[2] In response, Defendant asserts that as a result of Plaintiff's complaint to Human Resources, March was relieved of any supervisory authority over Plaintiff, and Plaintiff began reporting to Team and Winters. (*See* Def.'s Ex. A ¶ II; Compl. ¶ 12.) Defendant contends that it, therefore, did take corrective action in response to Plaintiff's complaint to Human Resources.

to Human Resources, Plaintiff received negative performance evaluations, was required to attend frequent progress meetings, was unjustly criticized, was given an increased workload with unreasonable deadlines, was "micromanaged" by supervisors, and received unspecified oral and written warnings. (*Id.* ¶ 25.)

On June 19, 2007, after having received what he deemed to be an inadequate response to his internal complaints, Plaintiff filed his first EEOC Charge, alleging that he was discriminated against because of his age in violation of the ADEA and because of his sex in violation of Title VII, and that he had been retaliated against for complaining about acts that were made unlawful under the ADEA and Title VII. In response, Plaintiff received his "right-to-sue" letter from the EEOC on or about December 21, 2007. (*See* Def.'s Ex. C.)

On November 23, 2007, Plaintiff filed his second EEOC Charge in which he contends that Defendant retaliated against him for complaining to Human Resources and for filing the first EEOC Charge by denying him a pay raise, changing his work assignments, denying a "professional credential he had earned," and placing him on a performance improvement plan. (Compl. ¶ 29.) Plaintiff alleges that Defendant's retaliatory actions culminated in Plaintiff's termination on or about September 11, 2007. (*Id.* ¶ 31.) Plaintiff also alleges that the above-mentioned conduct–denial of a pay raise, changing of work assignments, denial of a professional credential, being placed on a performance improvement plan, and his ultimate firing–were not only retaliatory acts, but were also acts of discrimination. (*See id.* ¶ 29.)

**DISCUSSION**

Failure to File Complaint within Ninety Days of Notice of Right to Sue

Defendant first contends that Plaintiff's claims should be dismissed because the suit was not timely filed. Title VII and the ADEA both set forth two prerequisites before a plaintiff may bring a lawsuit in federal court for discrimination. First, a plaintiff must file a timely Charge of Discrimination with the EEOC. Second, the plaintiff must file a lawsuit within ninety days of the plaintiff's receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(e)-(f)(1); 29 U.S.C. § 626(d)-(e). EEOC complainants that fail to meet either of these requirements are statutorily time-barred from pursuing a civil suit under either Title VII or the ADEA. Furthermore, the 90-day time period has been strictly construed, and, absent waiver, estoppel, or equitable tolling, a lawsuit filed in excess of the 90-day period will be dismissed. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

It is undisputed that Plaintiff did not file this lawsuit within 90 days of receiving the "right-to-sue" letter as to the first EEOC Charge. That is, Plaintiff here filed his first EEOC Charge on or about June 19, 2007. On or about December 21, 2007, the EEOC issued a right-to-sue letter, which specifically instructed Plaintiff that if he chose to file a lawsuit against Defendant, it "must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost." (*See* Def.'s Ex. C.) Therefore, the last day on which Plaintiff could have filed suit based on conduct alleged in the first EEOC Charge was on or about March 24, 2008.

Despite the 90-day warning, Plaintiff did not file suit until June 16, 2008, well outside the 90-day limitations period.

Plaintiff *did* file this lawsuit within 90 days of receiving the "right-to-sue" letter on the second EEOC Charge. The second EEOC Charge and the "right-to-sue" letter based on that charge, however, do not affect Plaintiff's ability to pursue claims based on time-barred allegations contained in his first EEOC Charge. *See, e.g.*, *Lo v. Pan Am World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (holding that the 90-day limitations period would be "meaningless" if "potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased"). Therefore, to the extent that Plaintiff's claims of sex and age discrimination in the second EEOC Charge are based on the same conduct asserted in his first EEOC Charge, Plaintiff's claims for age and sex discrimination must be dismissed as untimely.

Plaintiff's first EEOC Charge states, in full:

I. Since 2006 and continuing, I have been harassed first by Teighlor March, then by Jeanette Team and Steve Winters. I have been employed with [Defendant] since August 2006. [Defendant] employs twenty or more persons.

II. I have been subjected to derogatory age-biased comments, i.e., Ms. March commented that she wondered if I could deal with the fact that she and Ms. Team are younger women. I was also sexually harassed by Ms. March in that I was pressed to go to a male strip club. Then derogatory remarks were made and Ms. March told me that her husband was confident in his manhood and could handle a male strip club. I complained about Ms. March's comments and treatment. As a result of my complaints, I have been subjected to hostile daily progress meetings. After complaining, my supervisor was changed to Jeanette

Team and Steve Winters with the progress meeting two times per week. Those continue to this day. I am subjected to intense micro-management. My assignments have been changed. I have received two evaluations that are not reflective of me or my work. I believe that I am being retaliated against because of my complaints regarding Ms. March.

III. I believe that I am being discriminated against because of my age, 58[,] in violation of the ADEA, my sex, male[,] in violation of Title VII and in retaliation for complaining of acts I felt were made unlawful by the statutes.

(*See* Def.'s Ex. A.)

Plaintiff's second EEOC Charge states, in full:

I. In early 2007, I complained to the human resources representatives, Ms. Amy Roberston, Ms. Ann Thomas and Ms. Grace Thompson, about the offensive hostility directed toward me while in the work environment by two younger female managers. Also, in June 2007, I filed [Plaintiff's First EEOC charge] against [Defendant]. *Consequently*, my work load was increased to a level that was impossible to manage, my professional reputation was slandered and I was denied pay increases and denied PFS credentialing. Finally, on September 11, 2007, I was discharged from a project manager position. I was employed by [Defendant] from August 2006 until September 11, 2007.

II. My senior managers, including Mr. Steve Winters and Ms. Jeannette Team, told me that my work load was increased because they did not think I had enough work to do. Also, the [sic] told me that I was denied PFS credentialing because my work there did not count toward such and that I was denied pay increases and discharged because of my poor job performance.

I do not know who took over my job duties. However, just before I was discharged, a person, Name Unknown, was hired to fill a manager position in the same section where I worked.

III. I believe that I was discriminated against in violation of Title VII . . . and the Age Discrimination in Employment Act . . . because of my sex, male, my age, 59, and [in] retaliation for filing a prior EEOC charge against the employer and for complaining to the employer's human

>resources representatives about the offensive hostility directed toward me while in the work environment.

(*See* Def.'s Ex. B.) (emphasis added).

Defendant contends that Plaintiff's lawsuit is untimely as to Plaintiff's claims of sex and age discrimination. Alternatively, Defendant contends that the lawsuit is untimely at least as to any alleged discriminatory acts that occurred before June 19, 2007, when the first EEOC Charge was filed. Defendant contends that the second EEOC Charge did not allege acts of discrimination separate and apart from the first EEOC Charge. Rather, according to Defendant, the "discriminatory" acts listed in the second EEOC Charge were purported acts of retaliation by Defendant as a result of Plaintiff's complaints to Human Resources and to his first EEOC Charge. Defendant contends that Plaintiff has merely attempted to save his claims for sex and age discrimination by contending that Defendant's conduct towards Plaintiff after Plaintiff filed the first EEOC Charge–including increasing Plaintiff's work load, denying his PFS credentialing, and ultimately firing him–was *because of* Plaintiff's sex and age, rather than *in retaliation for* Plaintiff's informal complaints and his first EEOC Charge.

In response to Defendant's contention that his lawsuit is untimely, Plaintiff states that "[w]hen the right to sue letter was issued on the first claim, I was unable to file quickly because of confusion over the process . . . as well as extreme unemployment stress . . . and health reasons." (*See* Pl.'s Response Br. 3.) Therefore, Plaintiff admits in his response brief that his suit was untimely. He also

contends alternatively, however, that the second EEOC Charge listed new acts of discrimination that occurred separate and apart from the acts of discrimination listed in the first EEOC Charge. Therefore, Plaintiff contends that the court should deem as timely filed any claims for alleged acts of discrimination that occurred between June 19, 2007, and September 11, 2007.

After comparing the two EEOC Charges, it does appear that Plaintiff is attempting to circumvent the 90-day rule by recharacterizing various alleged acts of retaliation as set forth in the second EEOC charge–increasing Plaintiff's work load, denying his PFS credentialing, and ultimately firing him–as discrimination claims. Indeed, the second EEOC Charge plainly states that this alleged conduct was the "consequence" of Plaintiff's informal complaints and the filing of his first EEOC Charge. Nevertheless, in the Second EEOC Charge, Plaintiff has marked the boxes for *both* discrimination and retaliation, and he has alleged in the Complaint that the acts complained of in the second EEOC Charge constituted both discrimination *and* retaliation. (*See* Compl. ¶ 32.) Therefore, the court should give Plaintiff the benefit of the doubt and allow him to proceed on his theory that the acts complained of in the second EEOC Charge–including increasing Plaintiff's work load, denying his PFS credentialing, and ultimately firing him–as well as other conduct alleged in the Complaint, were retaliatory acts *as well as* discriminatory acts based on Plaintiff's sex and age. To this extent, the court should treat all alleged acts of sex and age

discrimination occurring between June 19, 2007, and September 11, 2007, as timely filed.

As to the acts of discrimination alleged in the first EEOC Charge, however, the court should find that those acts are clearly untimely, and Plaintiff should be barred from using the conduct described in the first EEOC Charge to support his age and sex discrimination claims. Finally, I note that although the timeliness requirement for filing an EEOC charge is subject to equitable tolling, Plaintiff's stated reasons for the untimely filing–confusion, being upset over losing his job, and health reasons–are not sufficient to warrant equitable tolling in this case. *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (stating that equitable tolling is reserved for those "rare instances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitation period against the party and gross injustice would result").

Motion to Dismiss Based on Failure to State a Claim

The court next considers Defendant's motion to dismiss Plaintiff's sex and age discrimination claims, as well as his state law wrongful discharge claim, for failure to state a claim. I first note that Plaintiff cites the North Carolina Equal Employment Practices Act as the source of North Carolina's public policy against age and sex discrimination. *See* N.C. GEN. STAT. § 143-422.2. Section 143-422.2 provides, in pertinent part:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without

-11-

>discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. GEN. STAT. § 143-422.2. Plaintiff has pleaded, with identical facts as his Title VII and ADEA claims, the state law wrongful discharge claim. In evaluating state law claims, the North Carolina Supreme Court refers to federal decisions for guidance in establishing evidentiary standards and principles of law. *See N.C. Dep't of Corr. v. Gibson*, 308 N.C. 131, 301 S.E.2d 78 (1983). Therefore, federal standards should be used in evaluating the merits of a state law wrongful discharge claim brought under section 143-422.2.

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests. See Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks omitted). With these principles in mind, the court now turns to the motion to dismiss.

I find that Plaintiff has alleged sufficient facts to survive the motion to dismiss as to both his state law wrongful discharge claim and his Title VII and ADEA claims. That is, as to his Title VII and ADEA claims, I have considered Plaintiff's allegations regarding discrimination for the time period between June 19, 2007, and September 11, 2007, and I find that Plaintiff has stated a claim for age and sex discrimination for conduct that occurred during this time period. Plaintiff has alleged that he is male, over forty, and that after he filed the first EEOC Charge on June 19, 2007:

> Defendant . . . continued and increased its hostile and adverse actions and took tangible, detrimental actions against plaintiff, including but not limited to . . . denying him a raise, changing his work assignments, reducing his responsibilities, criticizing his work, micromanaging his work, denying a professional credential he had earned, placing him on a performance improvement plan . . ., denying him the ability to transfer to other positions, and taking disciplinary action against him. . . . On or about September 11, 2007, defendant terminated plaintiff.

> Defendant's actions . . . were discriminatory because of plaintiff's gender, male, and/or his age. . . . By its actions, defendant discriminated against plaintiff . . . because of his sex [and age.]

(*See* Compl. ¶¶ 29, 31, 32, 44.) These allegations are sufficient to overcome Defendant's motion to dismiss as to Plaintiff's sex and age discrimination claims under Title VII and the ADEA.

Moreover, as for the motion to dismiss the claim for wrongful discharge in violation of North Carolina public policy, I have considered Plaintiff's allegations for the entire time period as alleged in the Complaint and have determined that Plaintiff has sufficiently stated a claim for wrongful discharge in violation of public policy. *See Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C.*, 226 F. Supp. 2d 785, 792 (W.D.N.C. 2002). That is, I have considered the above-recited allegations, as well as the alleged discriminatory acts that occurred before June 19, 2007, and I find that the allegations are sufficient to overcome Defendant's motion to dismiss as to the wrongful discharge claim.

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's motion to dismiss (docket no. 10) be **GRANTED** in part and **DENIED** in part. To this extent, the court should find that, as to Plaintiff's claims for sex and age discrimination under Title VII and the ADEA, only the alleged discriminatory acts occurring between June 19, 2007, and September 11, 2007, were timely filed, and

therefore only these acts may be considered in addressing Plaintiff's Title VII and ADEA claims. Furthermore, the court should find that Plaintiff has stated a claim for sex and age discrimination based on allegations of discrimination occurring between June 19, 2007, and September 11, 2007. Finally, the court should find that Plaintiff has stated a claim for wrongful discharge in violation of North Carolina public policy. If the court adopts this recommendation, the remaining claims will be (1) Plaintiff's Second and Third claims for sex and age discrimination under Title VII and the ADEA, respectively, based on acts occurring between June 19, 2007, and September 11, 2007; (2) Plaintiff's First claim for wrongful discharge in violation of North Carolina public policy; and (3) Plaintiff's Fourth claim for retaliation under Title VII and the ADEA.

／s／ _Wallace W. Dixon_
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
December 12, 2008